# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| JAMIE SMITH, Individually and on Behalf of All Others Similarly Situated, ) ) | Case No.: 13-cv-474 |
| ) | **CLASS ACTION COMPLAINT** |
| Plaintiff, ) | |
| vs. ) | |
| ) | **Jury Trial Demanded** |
| TEXCAP FINANCIAL, LLC, and MONCO LAW OFFICES, S.C. ) ) | |
| Defendants. ) | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Jamie Smith is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5.      Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act in that he engaged in a consumer transaction. Wis. Stat. § 421.301(17).

6.     Defendant TexCap Financial, LLC ("TexCap") is a foreign limited liability company with its principal place of business located at 14875 Landmark Blvd., Suite 108, Dallas, Texas 75254.

7.     TexCap is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time TexCap acquires them.

8.     TexCap uses the mails and other methods, including hiring attorneys, to directly collect allegedly defaulted debts that have been assigned to TexCap.

9.     Defendant Monco Law Offices, S.C. ("Monco") is a law firm with its principal place of business located at 12557 W. Burleigh Road, #6, Brookfield, Wisconsin 53005.

10.     Monco is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

11.     Monco is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Monco is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

12.     Monco, a law firm, is TexCap's agent with respect to the collection of the Plaintiff's and class members' alleged debts.

13.     TexCap, both directly and indirectly, is a debt collector under the above arrangement and, as principal, is jointly responsible for its agent's (i.e. Monco's) actions. 15 U.S.C. § 1692a(6).

## **FACTS**

14.     On or about June 5, 2012, TexCap mailed a debt collection letter to Plaintiff regarding an alleged debt owed to TexCap, and allegedly originally owed to "BMO Harris Bank, N.A."

2

15.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to the recipient inserted by computer.

16.     Upon information and belief, Exhibit A was the first letter Plaintiff was sent by TexCap regarding this alleged debt.

17.     Exhibit A contains the following text:

> On 06/01/2012 TexCap Financial purchased your BMO Harris Bank N.A.
> auto deficiency account from BMO Harris Bank N.A.. (sic)

18.     The alleged debt identified in Exhibit A is not an auto deficiency account. Upon information and belief, the alleged debt is an alleged credit card account used for personal, family or household purposes.

19.     The FDCPA prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

20.     The FDCPA specifically prohibits: "The false representation of — (A) the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(a).

21.     On or about July 5, 2012, Monco mailed a debt collection letter to Plaintiff regarding the same alleged debt owed to "TexCap Financial, LLC," as previously identified in Exhibit A. A copy of this letter is attached to this Complaint as Exhibit B.

22.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

23.     Upon information and belief, Exhibit B was the first letter Plaintiff was sent by Monco regarding this alleged debt.

24.     Exhibit A is on Monco's attorney letterhead and includes a signature purporting to be of attorney Amy M. Bates.

3

25. <u>Exhibit A</u> contains the following text:

We have been retained by TexCap Financial, LLC ("creditor") to collect from you the entire balance, which is set forth above. This sum includes all attorney fees and late charges.

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, I'll assume that it's valid. If you do dispute it – by notifying me to that effect – I will, as required by the law, obtain and mail to you proof of the debt.

26. The text in Monco's letter to Plaintiff is inconsistent with 15 U.S.C. § 1692g(a)(4), which states:

(a) **Notice of debt; contents**
Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(emphasis added).

27. <u>Exhibit B</u> fails to inform the consumer that, in order to invoke his or her verification rights, the consumer must dispute the debt to the debt collector in writing. 15 U.S.C. § 1692g(a)(4).

28. By omitting the words "in writing," Monco did not effectively convey to the consumer his rights under the FDCPA. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003); *see also Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act.").

4

29.     The statement in <u>Exhibit B</u>: "This sum includes all attorney fees and late charges," is also false, misleading and confusing to the unsophisticated consumer.

30.     The amount of the alleged debt that TexCap attempted to collect in <u>Exhibit A</u>, and Monco attempted to collect in <u>Exhibit B</u>, are identical ($12,328.19).

31.     Thus, Monco's attorney fees cannot be included in the stated amount of the debt on <u>Exhibit B</u>. If Monco's attorney fees are zero, they are not included in the balance because they do not exist. Alternatively, if Monco intended to seek additional attorney's fees at a later time, those fees are also not included in the balance stated on <u>Exhibit B</u>.

32.     Moreover, while Wisconsin law may provide nominal statutory attorney's fees of $500 for an alleged debt of this amount, the statutory fee is not included in the amount of the debt, as the letter claims it is. Wis. Stat. § 814.04(1)(a). If the statutory attorney fee is included in the amount of the debt, then TexCap misstated the amount of the debt by applying attorney's fees before an attorney was actually hired.

33.     The language of <u>Exhibit B</u> is also ambiguous and implies to the unsophisticated consumer that Monco could attempt to collect reasonable attorney fees of a much greater amount. In fact, the Wisconsin Consumer Act does not permit the addition of "reasonable attorney fees" to most consumer credit transactions, including the alleged credit card account at issue in this action. Wis. Stat. § 422.411(1).

34.     Furthermore, <u>Exhibit B</u> falsely states that an attorney was meaningfully involved in the collection of the account in July 2012.

35.     The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the

5

heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

36.     "If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file."  *Id.*

37.     "In the alternative, a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter." *Gonzalez v. Kay*, 577 F.3d 600, 604 (5th Cir. 2009); *citing Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005).

38.     An unsophisticated consumer would understand Exhibit B to be a letter from an attorney and would believe that legal action will or could be taken against him or her.

39.     Exhibit B does not include a disclaimer like the one discussed in *Greco*, 412 F.3d at 361-62.

40.     At the time Exhibit B was mailed to Plaintiff and the class, Monco had no intention to sue Plaintiff.

41.     Moreover, upon information and belief, at the time Exhibit B was mailed to Plaintiff and the class, Attorney Bates had not assessed the validity of the alleged debts to the standards required of an attorney.

42.      Upon information and belief, at the time Exhibit B was mailed to Plaintiff and the class, Bates had not reviewed any documentation underlying the alleged debts, including but not limited to any contract, payment history or any other documents establishing or evidencing the alleged debts.

6

43.     Upon information and belief, at the time <u>Exhibit B</u> was mailed to Plaintiff, Bates had not reviewed anything relating to Plaintiff's account. Instead, a computer or a non-attorney assistant at Monco either generated and signed the letters for Bates, or presented the letters to Bates to sign after a cursory review of the letter.

44.     Upon information and belief, at the time <u>Exhibit B</u> was mailed to Plaintiff, Bates had not exercised the professional judgment of an attorney that Plaintiff or any other class member was delinquent on his or her debt and a candidate for legal action, nor was Bates meaningfully involved in the decision to send <u>Exhibit B</u> to Plaintiff and the class.

45.     Upon information and belief, Bates did not personally review each class member's collection letter in any meaningful sense, before the letter was mailed.

46.      Upon information and belief, Bates did not make an individualized assessment of the class member's circumstances or liability, before <u>Exhibit B</u> was mailed to each class member.

47.     It is questionable whether Monco and Attorney Bates ever make an individualized assessment of the class member's circumstances or liability, even when they do file collection lawsuits.

48.     According to CCAP, Monco did not file any lawsuits on TexCap accounts in Wisconsin courts until January 2013, six months after <u>Exhibit B</u> was mailed to Plaintiff. Monco then filed 69 TexCap cases over a two day period – February 28 and March 1, 2013.

49.     As of April 29, 2013, TexCap has not sued Plaintiff on the alleged debt in <u>Exhibits A and B</u>.

50.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

51. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

52. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

53. Wis. Stat. § 427.104(1)(h) prohibits: "Engag[ing] in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer."

54. Wis. Stat. § 427.104(1)(L) prohibits: "Threaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. Count I is brought against Defendant TexCap.

57. Exhibit A falsely states that TexCap is attempting to collect an auto deficiency account.

58. In reality, the alleged debt is a credit card debt.

59. The false statement, incorrectly identifying the type of account TexCap is attempting to collect, is confusing to the unsophisticated consumer.

60. Most consumers whose credit card accounts were purchased by TexCap would not have an auto deficiency account and would not understand why TexCap was attempting to collect an auto deficiency account from them.

61. Exhibit A falsely states the character of the debt.

62. TexCap violated 15 U.S.C. §§ 1692e and 1692e(2)(a).

## COUNT II – FDCPA

8

63.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

64.     Count II is brought against both Defendants.

65.     Exhibit B fails to inform the consumer that, in order to invoke his or her verification rights, the consumer must dispute the debt to the debt collector in writing. 15 U.S.C. § 1692g(a)(4).

66.     Defendants violated 15 U.S.C. §§ 1692g, 1692g(a)(4) and 1692e(10).

## COUNT III – FDCPA

67.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

68.     Count III is brought against both Defendants.

69.     The language in Exhibit B: "This sum includes all attorney fees and late charges," is false and misleading to the unsophisticated consumer.

70.     No attorneys' fees are included in the amount stated on Exhibit B.

71.     The language in Exhibit B implies that Munco could add attorney's fees to the alleged debt. In fact, the Wisconsin Consumer Act prohibits the addition of attorney's fees to Plaintiff's alleged debt. Wis. Stat. §§ 422.411(1), 814.04(1)(a).

72.     The language in Exhibit B misstates the character, amount, or legal status of the alleged debt, in that no attorney fees have been included despite the.

73.     In the alternative, if Wisconsin statutory attorney fees are included in the amount stated on Exhibit A, then TexCap has misstated the character, amount, or legal status of the alleged debt, in that it added attorney's fees to the balance before an attorney was hired.

74.     Defendants violated 15 U.S.C. §§ 1692e and 1692e(2)(a).

## COUNT IV – FDCPA

9

75.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76.     Count IV is brought against both Defendants.

77.     Exhibit B creates the false impression that Attorney Bates had personally reviewed the circumstances of Plaintiff's and class members' alleged debts and Exhibit B itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

78.     Before mailing Exhibit B to Plaintiff and the class, Attorney Bates did not have any meaningful involvement with Plaintiff's or class members' alleged debts or the letters. *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

79.     Such conduct violates 15 U.S.C. §§ 1692e, 1692e(3) and 1692e(10).

## COUNT V – WCA

80.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81.     Exhibit B threatens and implies legal action notwithstanding the fact that, upon information and belief, neither Monco, nor the creditor had any intention of initiating such action at the time Exhibit B was sent.

82.     Defendants violated Wis. Stat. §§ 427.104(1)(h) and 427.104(1)(L).

## CLASS ALLEGATIONS

83.     Plaintiff brings this action on behalf of two Classes.

84.     Class 1 consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter by TexCap Financial, LLC, in the form represented by Exhibit A, (c)

seeking to collect a debt for personal, family or household purposes, (d) on or after April 29, 2012, (e) that was not returned by the postal service.

85.     Class 2 consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter by Monco Law Offices, S.C. in the form represented by Exhibit B, (c) seeking to collect a debt incurred for personal, family or household purposes that is allegedly owed to TexCap Financial, LLC, (d) on or after April 29, 2012, (e) that was not returned by the postal service.

86.     The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

87.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A and B violate the FDCPA and the WCA.

88.     Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

89.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

90.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

**JURY DEMAND**

91.     Plaintiff hereby demands a trial by jury.

11

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  April 29, 2013

ADEMI & O'REILLY, LLP

By:     /s/ John D. Blythin
        Shpetim Ademi (SBN 1026973)
        David J. Syrios (SBN 1045779)
        John D. Blythin (SBN 1046105)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        sademi@ademilaw.com
        dsyrios@ademilaw.com
        jblythin@ademilaw.com